ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| SBH Services & CORE Construction, JV II ) | ASBCA No. 61714 |
| ) | |
| Under Contract No. W912QR-14-C-0001 ) | |

APPEARANCES FOR THE APPELLANT:    Ms. Sharon Athas Coté
                                                            Managing Partner

                                                            Derrick Haddox, Esq.
                                                            Swanson, Martin & Bell, LLP
                                                            Chicago, IL

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
                                                            Engineer Chief Trial Attorney
                                                            R. Lauren Horner, Esq.
                                                            Engineer Trial Attorney
                                                            U.S. Army Engineer District, Louisville

OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD ON
THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The government moves to dismiss this appeal for lack of subject matter jurisdiction, alleging that appellant failed to properly certify its claim in accordance with the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. The government also asserts that the underlying claim was brought as a pass-through claim by a second-tier subcontractor that lacks privity with the government. For the reasons set forth below, the government's motion is denied.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On November 27, 2013, the United States Army Corps of Engineers (government) awarded Contract No. W912QR-14-C-0001 to SBH Services & CORE Construction, JV II (SBH or appellant) for the construction of Barkley Elementary School, Fort Campbell, KY at a base price of $38,670,097.00, with the opportunity for future options to be awarded at a later date (R4, tab 2 at 6).

2. SBH executed a subcontract agreement with MPS Geothermal (MPS) on May 21, 2014, for the furnishing of all labor, materials, equipment, and other necessary construction services required for a complete "turnkey" construction of Barkley Elementary School at Fort Campbell, KY (R4, tab 11 at 3370).

3. Sometime thereafter, MPS entered into a subcontract with Jackson & Sons Drilling & Pump, Inc. (Jackson or second-tier subcontractor) (compl. ¶ 11; answer ¶ 11).

4. By serial letter S-0089, dated December 5, 2016,[1] SBH submitted to the government a request for equitable adjustment (REA) for "Geothermal Different [sic] Site Conditions" in the total amount of $1,899,636.00 and for a 63-day time extension. The total amount sought included amounts for MPS, Byrd Survey, Charles Dewesee Construction, S&ME and SBH. (R4, tab 446 at 4939-40) Included as part of the REA transmitted with S-0089 was a two-page letter from Jackson, the second-tier subcontractor, addressed to the contracting officer (CO) and purporting to be a claim for its portion of the REA ($1,008,547.49). That letter was dated November 4, 2016 and was submitted and certified by James D. Jackson, President of second-tier subcontractor Jackson. While that certification included all of the assertions required for a claim certification under the CDA, 41 U.S.C. § 7103 (b), including that he was "authorized to certify the claim on behalf of the Contractor," he also made clear that he signed in his capacity as President of Jackson & Sons Drilling & Pump, Inc. (*Id.* at 4942-43)

5. By letter dated December 15, 2016, the CO requested clarification on whether SBH's December 5, 2016 letter was an REA, or whether appellant was seeking "a Final Contracting Officer's Decision in accordance with 41 U.S.C. § 7103" (R4, tab 447).

6. By letter dated December 22, 2016 to the Louisville, KY District Corps office, and not to Fort Campbell as other correspondence was addressed, SBH seemed to affirm that the December 5, 2016 package submission "was meant to be a REA" (R4, tab 448). Later, a letter dated April 4, 2017 advised that the December 5, 2016 correspondence was intended for another REA, not the one for Geothermal differing site conditions (R4, tab 450). Because it was not addressed to Fort Campbell, but to another Corps office, we find that the December 5, 2016 letter was, in fact, meant for a separate REA.

7. By serial letter S-0095, dated March 10, 2017, SBH stated:

> This letter is sent in reference to SBH | CORE letter S-0095[2] and documentation submitted with that letter, which USACE acknowledged they were in receipt on January 4th, 2017. We want to bring to your attention that all the documentation

---

[1] Serial letter S-0089 is undated; however, the government asserts it received a package containing S-0089 that was dated December 5, 2016 (R4, tab 447). Appellant does not contest this date.

[2] Appellant twice incorrectly referenced S-0095. The correct letter of reference is S-0089, which included the documentation SBH asserts was submitted as a claim. Appellant corrects this error in S-0098. (R4, tab 450)

2

turned in with S-0095 was submitted as a Claim, and not as
an REA.

(R4, tab 449)

8. By serial letter S-0098, dated April 4, 2017, and headed: "Subject Matter: Claim for Geothermal Different [sic] Site Conditions", SBH stated:

> This letter is sent to provide clarification about Different [sic] Site Conditions for Geothermal which was submitted as a Claim under SBH | CORE letter S-0089, and USACE acknowledged that they were in receipt of the letter and package on January 4th, 2017. The Claim was put together by the attorney representing Jackson Geothermal (2nd tier subcontractor) to SBH | CORE. The claimant has certified the Claim and it was included in the packet submitted under S-0089. All the documentation supporting this Geothermal Claim were submitted under SBH | CORE letters S-0089 and S-0095.

(R4, tab 450 at 5173) Serial letter S-0098 was on SBH letterhead, included a CDA claim certification making all of the required assertions, and was certified by Saravanan Sathya, the SBH Project Manager (*id.*). We find as fact that the claim was perfected upon submission of the Project Manager's CDA certification on April 4, 2017.

9. On April 24, 2018, the CO issued a final decision (COFD). The CO notified SBH that for the purposes of this decision, he would treat serial letters S-0089 and S-0095 as a "claim." (R4, tab 1 at 1)

10. The COFD stated that SBH had shown some entitlement warranting some sort of compensation for differing site conditions, but no additional time. However, the CO ultimately concluded that, although some merit to the claim was found, the government was "unable to fix an amount for a contract modification and must leave that for further negotiation and/or adjudication." (*Id.* at 5)

11. By letter dated July 20, 2018, appellant timely filed a notice of appeal to the Board, which the Board docketed as ASBCA No. 61714.

## DECISION

The government contends that the Board lacks jurisdiction over this appeal because appellant failed to properly certify its claim in accordance with the CDA (gov't mot. at 1). The government's motion asserts that serial letter S-0098 fell short of the necessary

3

requirements to convert appellant's REA into a claim in two different aspects:
1) appellant named Jackson as the claimant; and 2) appellant discussed two different matters in the claim but failed to clarify which issue was being certified (*id.* at 10-11). Additionally, the government contends that SBH's claim is a "pass-through claim" from a subcontractor that lacks privity with the government (*id.* at 1). Firstly, Jackson is not the only subcontractor with a claim; moreover, the prime contractor, SBH, also has a part of the claim. Secondly, we were not confused by the discussion of two matters in S-0098; appellant made it clear that the other matter was not relevant, thus the certification clearly only applied to the differing site conditions claim on behalf of MPS, other subcontractors and the prime. That claim was perfected on April 4, 2017 when the prime contractor submitted a proper CDA certification (SOF ¶ 8).

The cornerstone of the Board's jurisdiction over a contractor claim lies in the contractor's submission of a proper claim to the CO for a decision. *Air Services, Inc.*, ASBCA No. 59843, 15-1 ¶ 36,146 at 176,424 (citing *Puget Sound Environmental Corp.*, ASBCA Nos. 58827, 58828, 14-1 BCA ¶ 35,585 at 174,371). The CDA does not define the term "claim," however, the Federal Acquisition Regulation (FAR) defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101. Any purported claim that exceeds $100,000 must be certified in accordance with 41 U.S.C. § 7103(b) or it will not qualify as a CDA claim. FAR 2.101. The Board decides if a contractor's submission is a CDA claim on a "case-by-case" basis, applying a common sense analysis. *Air Services*, 15-1 ¶ 36,146 at 176,424 (citing *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Precision Standard, Inc.*, ASBCA No. 55865, 11-1 BCA ¶ 34,669 at 170,787). The Board has found that the sufficiency of a claim may be determined based on the totality of the correspondence between the parties. *Air Services*, 15-1 ¶ 36,146 at 176,424 (citing *Lael Al Sahab & Co.*, ASBCA Nos. 58344, 59009, 15-1 BCA ¶ 35,809 at 175,129; *Vibration & Sound Solutions Ltd.*, ASBCA No. 56240, 09-2 BCA ¶ 34,257 at 169,270).

The government makes numerous arguments as to why appellant's claim was not properly certified in accordance with the CDA (gov't mot. at 9-18), ultimately concluding that as a result, no valid claim exists and the Board must dismiss the appeal (gov't mot. at 9). As noted, we found otherwise and the claim was, in fact, properly certified on April 4, 2017 (SOF ¶ 8).

The CDA, at 41 U.S.C. § 7103(b)(1), requires that contractor claims submitted for more than $100,000 shall contain the following certification:

> a) the claim is made in good faith;
> b) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;

4

c) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and

d) the certifier is authorized to certify the claim on behalf of the contractor.

A defective certification does not deprive the Board of jurisdiction over the claim but the Board must require correction of the certification prior to entry of a final decision, 41 U.S.C. § 7103(b)(3). FAR 33.201 defines a "defective certification" as "a certificate which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person authorized to bind the contractor with respect to the claim. Failure to certify shall not be deemed to be a defective certification."

The government's reference to *Eurostyle Inc.*, ASBCA No. 45934, 94-1 BCA ¶ 26,458 misses the mark (gov't mot. at 9). In *Eurostyle Inc.*, the contractor submitted a certified claim for a time extension but did not include any monetary claim for damages, making a certification for that claim irrelevant as the later demand for money was beyond the scope of the appeal. 94-1 BCA ¶ 26,458 at 131,654-55. In this appeal, appellant's monetary claim in the amount of $1,899,636.00 was submitted to the CO along with a proper CDA claim certification (SOF ¶ 8). Therefore, the Board concludes that a valid claim under the CDA exists.

The government argues that appellant was required to provide a new written notice to the CO in order to convert its REA into a claim in conformity with FAR 2.101 (gov't mot. at 10). We disagree. FAR 2.101 states that "[a] voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a) . . . ." Appellant informed the government that it intended its REA submission to be treated as a claim, and also provided the necessary CDA claim certification (SOF ¶¶ 7-8). The Board views appellant's submission as conforming to FAR 2.101.

The government contends that the Board cannot find appellant's REA is a defective claim that can be corrected, but the government relies on authority that is not binding upon the Board when citing to *Agility Def. & Gov't Servs. v. United States*, 103 Fed. Cl. 366, 369 (2012) (gov't mot. at 10). Moreover, the facts in the instant case are distinguishable from those of *Agility*. Here, SBH provided all four certification statements required of a claim under the CDA (SOF ¶ 8).

The government also argues that the claim in serial letter S-0098 names second-tier subcontractor Jackson as the claimant, and due to Jackson being named the claimant, the certification provided in appellant's claim bears no weight (gov't mot. at 10-11). Appellant counters by noting the common practice for prime contractors to

5

sponsor a subcontractor's claim, and in some cases allowing the subcontractor's counsel to prosecute claims in the name of the prime (app. resp. at 9).

It is well settled that a subcontractor "'may prosecute its claims only through, and with the consent and cooperation of, the prime . . . .'" *Marine Contractors, Inc.*, ASBCA No. 54017, 03-1 BCA ¶ 32,240 at 159,425 (quoting *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 814 (Fed. Cir. 1984)). A prime contractor frequently permits its subcontractor to prosecute claims in the prime contractor's name if it is perceived that "the subcontractors [] have more at stake in a claim and are therefore willing to work harder on its enforcement. Subcontractors may also be the only ones in full possession of the facts." *Erickson*, 731 F.2d at 813. When a prime contractor sponsors the appeal of its subcontractor, the prime contractor "must itself" certify the claim. *Doyon Properties-American, JV*, ASBCA No. 55842, 08-1 BCA ¶ 33,752 at 167,082 (citing *St. Paul Fire and Marine Insurance Co.*, ASBCA No. 53228, 02-2 BCA ¶ 32,025; *Continental Maritime of San Diego, Inc.*, ASBCA No. 36733, 89-1 BCA ¶ 21,249; *Raymond Kaiser Engineers, Inc./Kaiser Steel Corp., JV*, ASBCA No. 34133, 87-3 BCA ¶ 20,140).

The claim was prepared by the attorney representing Jackson through and in SBH's name (SOF ¶ 8). Appellant's serial letters S-0089, S-0095, and S-0098 were submitted on appellant's letterhead and signed by appellant's project manager (SOF ¶¶ 4, 7-8).[3] The Board notes that the claim certification submitted by Jackson in S-0089 was invalid, since Jackson was a second-tier subcontractor not in privity with the government, but this was cured by S-0098, which contained a proper CDA claim certification by appellant (SOF ¶ 4, 8). We find that Jackson properly brought its claim through and with the consent of SBH, and in SBH's name. We also find that SBH properly sponsored Jackson's appeal.

The government contends that appellant discussed two matters in serial letter S-0098, and it was unclear as to which matter was being certified. Due to this lack of clarity, the government argues that appellant failed to convert its REA to a CDA claim. (Gov't mot. at 11) We disagree. Appellant clearly stated in S-0098 that the "Different [sic] Site Conditions for Geothermal" in S-0089 were submitted as a claim. Appellant further stated that all of the supporting documentation submitted under S-0089 and S-0095 were submitted as a claim. SBH concluded S-0098 with a proper CDA claim certification. (SOF 8; app. resp. at 11) The government's argument here is unfounded and entirely based on opinion, without any legal authority to support its assertions. The Board has found no confusion that would warrant the complete disregard of appellant's proper CDA claim certification.

---

[3] At no point does the government contend appellant's project manager was not duly authorized to certify the claim on behalf of the appellant.

6

Lastly, based on the *Severin* doctrine (*Severin*), the government asserts that appellant is barred from bringing forth a claim (gov't mot. at 11). In *Severin*, the court held that a prime contractor is precluded from sponsoring a subcontractor's claim against the government if the prime contractor is not liable for the subcontractor's damages. *Severin v. United States*, 99 Ct. Cl. 435, 442-44 (1943). The government bears the burden of proof in showing that *Severin* applies. *See E.R. Mitchell Construction Co. v. Danzig*, 175 F.3d 1369, 1370 (Fed. Cir. 1999) (citation omitted). However, an argument based on *Severin* should be decided on the merits of the case. To issue a dismissal in a motion to dismiss for lack of jurisdiction "on *Severin* grounds is unwarranted." *BearingPoint, Inc.*, ASBCA No. 55354, 08-2 BCA ¶ 33,890 at 167,732.

We find that appellant properly certified its claim in accordance with the CDA and the Board has jurisdiction over this appeal.

## CONCLUSION

The government's motion to dismiss for lack of jurisdiction is denied.

Dated: January 27, 2020

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

CHERYL L. SCOTT
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61714, Appeal of SBH Services & CORE Construction, JV II, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8